# Pennsylvania Railroad Company *versus* Bock.

1. In an action by a father to recover damages for the death of his son by the alleged negligence of a railroad company, the defendant requested the court to charge that the plaintiff, being about to drive a team, with two mules and a horse on the lead, across a railroad track, with a loaded wagon, where trains were running propelled by steam, having placed his son, seven years of age, on the lead horse, over which he (the father) had no control, was guilty of negligence in placing his son in such a dangerous position, and cannot recover for the loss of the life of his son or his horse killed by the passing train; which the court answered: "This point, assumes a fact, the existence or non-existence of which is a question for your determination, to wit: That the plaintiff placed his son on a horse over which he had no control. This is for you, and we cannot assume it. If it were true it would be strong evidence of negligence. It is for you to find, under all the evidence in the case, whether there was negligence either on the part of the plaintiff or of his son, who was killed, which contributed to the production of the accident. If there was such contributing negligence, the plaintiff cannot recover." *Held*, that the assumption in the point forbade its affirmance, and that it could have been well refused without any qualifying remarks. *Held, further*, that there was error in the remark that if the assumed facts were true, it would be strong evidence of negligence, for on the verity of the facts as assumed, without reference to other proofs, the plaintiff was guilty of negligence, and as it was not certain that this error did the defendant no harm, the judgment must be reversed.

2. Defendant moved in arrest of judgment on the ground that there had been a misjoinder of rights of parties. The declaration discovered no inconsistency in the rights sued upon, nor any misjoinder of the claimants there-

[Pennsylvania Railroad Co. v. Bock.]

under. *Held*, that there was nothing on the face of the record to arrest the judgment, and if there was actual misjoinder, it should have been taken advantage of on the trial.

3. A common-law and statutory claim for damages may be joined in the same action when they admit of the same pleas and are followed by the same judgment.

4. A father brought an action against a railway company for the death of his minor son by the alleged negligence of the company. In the same suit he also joined a claim for damages for a horse killed at the same time. At the trial it was agreed that the case should be tried as if the mother of the boy were a party, and that she should be concluded by the verdict. The verdict was for the plaintiff. A motion was made in arrest of judgment. *Held*, that there was nothing on the record which could be taken advantage of by this motion.

March 5th 1880. Before Sharswood, C. J., Gordon, Paxson, Trunkey and Sterrett, JJ. Mercur and Green, JJ., absent.

Error to the Court of Common Pleas of *Bucks county:* Of July Term 1878, No. 67.

Case by Anthony Bock against the Pennsylvania Railroad Company to recover damages for the death of his son and also for the loss of a horse, killed at the same time, by one of defendant's trains.

At the trial, it was agreed that the action should be tried with the same effect as if the plaintiff's wife had been a party plaintiff, and that she should be concluded by the verdict.

It appeared from the evidence that on the morning of the 31st of May 1875, the plaintiff was hauling manure from a stable in the town of Bristol, Bucks county. His team consisted of a hay wagon, two mules and a horse on the lead. In going to the stable, he had to cross the track of the defendant's railroad, which at this point runs through a well-built up portion of the town. He had crossed the track along this road driving the two mules, and had sent his son with the horse by another road which passes under the railroad track, but which at that time was impassable for wagons. The son was a strong and very intelligent lad about seven years old, and who was accustomed to assist his father in various ways. While the plaintiff was loading the manure at the stable, the lad brought the horse up and geared him to the wagon, and when his father was ready to start, he jumped on the horse's back and the team started off. There was no line attached to the horse, the boy on his back controlling him by the bridle, while the father walked by the side of the near mule, and taking him by the bridle thus directed the movements of the team. There is an incline on either side of the railroad track at the point of the crossing, and at the foot of this, about sixty feet from the track, the plaintiff stopped the team. From this point the track is only visible a few feet in a westerly direction, the view being obstructed by the houses, but at about ten to twelve feet from the track the view in

[Pennsylvania Railroad Co. v. Bock.]

the same direction is unobstructed for about four hundred and sixty-eight feet, and from the middle of the track the view is clear for 1500 feet. The crossing is made of planks laid down between the rails and making an even surface. When plaintiff stopped his team, he proceeded alone to the middle of the track, and stood there looking in both directions and listening for about a half minute, and not seeing or hearing a train, he called to the boy to come on, and plaintiff walked back to his usual place and took the near mule by the bridle. At the moment when the horse reached the first rail of the track, the plaintiff heard a train approaching. He shouted and jerked the mule back, but the horse had gotten on the track, was struck by the east-bound train, and instantly killed. The boy was thrown on the truck of the engine in front of the boiler, and died a few hours after the accident from his injuries. There was a conflict of evidence as to the speed of the train. One witness testified that both he and the plaintiff shouted, but that within three seconds from the time the train was in sight the accident occurred. It was alleged on the part of the plaintiff, that the speed of the train was in excess of that allowed by the ordinance of the borough. The evidence as to the rate of speed varied from eight to twenty-five miles an hour. The testimony was equally conflicting as to whether the whistle of the engine was blown or its bell rung.

The fifth point of the defendants, with the answer of the court, Watson, P. J., were as follows:

5. That the plaintiff being about to drive a team, with two mules and a horse on the lead, across a railroad track with a loaded wagon, where trains were running propelled by steam, having placed his son, seven years of age, on the lead horse, over which he, the father, had no control, was guilty of negligence in placing his son in such a dangerous position, and cannot recover for the loss of the life of his son or his horse, killed by the passing train.

Ans. "This point assumes a fact, the existence or non-existence of which, is a question for your determination, to wit: That the plaintiff placed his son on a horse over which he had no control. This is for you and we cannot assume it. If it were true, it would be strong evidence of negligence. It is for you to find under all the evidence in the case, whether there was negligence either on the part of the plaintiff or of his son, who was killed, which contributed to the production of the accident. If there was such contributing negligence, the plaintiff cannot recover."

The verdict was in favor of plaintiff for the sum of $2176 for horse and funeral expenses included, and six cents costs.

The defendant moved, in arrest of judgment, for the following reasons: 1. The action was brought for damages to the plaintiff and wife, for the loss of their son, and the declaration joined a claim for a large sum, to wit: $500 in and about the taking care of the

[Pennsylvania Railroad Co. *v.* Bock.]

body of said Anthony Bock, Jr., and in and about his funeral expenses, which claims were not in the same right, and could not be joined in the same suit and averred in the same declaration.    2. The declaration in the action, sets forth as the cause of action, an injury causing death, the result of negligence by the defendant; that the person killed was a minor child of plaintiff, and at the commencement of the trial, it was agreed, " that this action shall be tried in the same manner and with the same effect, as if Linda Bock, wife of plaintiff, had been a party plaintiff thereto ; and that the recovery, if any is had, shall include all her demands against the defendant, and that she shall be concluded by the verdict should it be in favor of the defendant," stating a cause of action in favor of the parents for the loss of the life of a child under the statute ; and in the same declaration, a claim for taking care of the body of said child, and in and about his funeral expenses ; and a separate count for the loss of a horse caused by the negligence of the defendant, which said funeral expenses and the damages for the loss of the horse, belonged to the said Anthony Bock ; and the damages for the injury causing the death of the child, belonged to the husband and wife jointly, and could not be joined in the same action ; and the verdict is for a gross sum for plaintiff for horse and funeral expenses included, which claims cannot be joined.    3. The declaration joins a claim for damages under the statute for an injury causing death, the damages for which belong to two persons, with a cause of action at common law, for the loss of a horse and funeral expenses of a child belonging to one person ; and the verdict is for a gross sum, and is expressly found by the jury to be for " $2176, for horse and funeral expenses included," without designating the proportions for each, upon which no judgment can be entered.    4. There is a misjoinder of parties and causes of action, and a verdict for a gross sum upon which no judgment can be entered.    5. There is a judgment for a gross sum for causes of action, which as stated in the declaration, belong to different parties, without designating which part belongs to each, upon which no judgment can be entered.

The court overruled the motion in an opinion, saying :

" It is almost unnecessary to say we can arrest the judgment only for error apparent on the face of the record.   Is there such error here ?   The wrong complained of in the *narr.* is negligence resulting in, 1. The killing of the plaintiff's minor son, whereby he lost his services and was put to expense in taking care of and burying his body ; 2. The killing of his horse.   When the jury was about to be empanelled it was agreed by the parties ' that this action shall be tried in the same manner and with the same effect as if Linda Bock, wife of plaintiff, had been a party plaintiff thereto, and that the recovery, if any is had, shall include all her demands against the defendant, and that she shall be concluded by the ver-

[Pennsylvania Railroad Co. v. Bock.]

dict should it be in favor of the defendant.' We do not regard this as making the wife a party to the suit. We look upon it rather as an agreement that the entire damages should be determined and recovered in the suit by the husband, and that in consideration thereof the defendant should not thereafter be molested by any claim by or for the wife. But suppose we consider the agreement as placing her as a party plaintiff on the record? How does this render an error apparent on its face? The effect would be to join her as a plaintiff on every count and upon every statement of ownership or claim. Instead of a separate cause of action in the husband for separate injuries to him, we should have a statement of a joint cause of action for injury to joint property in the horse, joint expenses in the burial of the son, and joint loss by reason of his death. The declaration would still be a consistent whole. There would be nothing there to show the several items if the demand were in different rights. The error, if any, in this respect, would be on the trial and not on the face of the record. We see no reason why the common-law claim for the loss of the horse, and the statutory claim for the loss of the son, may not be joined in the same declaration. They are of the same nature, admit of the same pleas and are followed by the same judgment: 1 Ch. Pl. 197; Martin v. Stille, 3 Whart. 337. These views apply to all the reasons in support of the motion for arrest of judgment."

Judgment was then entered on the verdict, when defendant took this writ, and alleged that the court erred, inter alia, in the answer to defendant's fifth point, in overruling the motion in arrest of judgment, and in entering judgment on the verdict.

*G. & H. Lear*, for plaintiff in error.—When a child is placed in danger by the positive act of its guardian, it is contributory negligence: Kay v. Pennsylvania Railroad Co., 15 P. F. Smith 269. If parents permit a child of tender years to wander on a street, it is negligence: Phila. and Reading Railroad Co. v. Long and Wife, 25 P. F. Smith 257. It is the duty of the parent at all times to shield his child from danger, and this duty is the greater when the risk is imminent; the degree of protection is in proportion to the helplessness and indiscretion of the child: Glassy v. Hestonville, Mantua & Fairmount Passenger Railway Co., 7. P. F. Smith 172. See Smith v. O'Conner, 12 Wright 218; P. A. & M. Railway Co. v. Pearson and Wife, 22 P. F. Smith 169. See also the recent case of Smith v. The Hestonville Railway Co., 11 Norris 450.

The action for death by negligence is statutory, while that for the loss of the horse is a common-law remedy, and the two cannot be joined: Pennsylvania Railroad Co. v. Zebe, 9 Casey 328; North Pennsylvania Railroad Co. v. Robinson, 8 Wright 178; 1 Chitty, sect. 200. The wife had no cause of action for the horse, and

there was therefore a misjoinder of her and her husband's right, with his alone : 1 Chitty 205, sect. 75.

*B. F. Gilkeson, George Ross* and *L. L. James,* for defendant in error.—Observation of the practice of teamsters, having a team of four or three horses, will demonstrate that the position of the driver is upon the back, or at the bridle of the near-side tongue horse. Whether the position of the father gave him the opportu-nities of control which it is claimed it did, was a question of fact for the jury, and for them alone ; as such, it was submitted, and their verdict determines that they—whether from their own experience as farmers or otherwise—found the fact to be true. Whether the situation of the boy upon the horse contributed to the accident, is a question for the jury : Catawissa Railroad Co. *v.* Armstrong, 2 P. F. Smith 282. The question of contributory negligence is to be determined by a reference to the age, intelli-gence and physical strength of the person injured, and the circum-stances under which the injury was sustained : Oakland Railroad Co. *v.* Fielding, 12 Wright 320 ; Philadelphia Passenger Railroad Co. *v.* Hassard, 25 P. F. Smith 367.

The defendant having taken his chances before a jury, without objection, should not now be permitted to unravel the whole case upon a question such as here raised. Upon the trial, the plaintiff below could have entered a non. pros. as to the counts for the horse and funeral expenses ; and what might have been permitted below, in the nature of an amendment, is not ground for reversal after a trial on the merits: Shoenberger *v.* Zook, 10 Casey 24 ; Roop *v.* Roop, 11 Id. 59 ; Loew *v.* Stocker, 11 P. F. Smith 347 ; Kelsey *v.* Bank of Crawford County, 19 Id. 426.

Mr. Justice TRUNKEY delivered the opinion of the court March 29th 1880.

The defendant's fifth point was, " that the plaintiff being about to drive a team, with two mules and a horse on the lead, across a railroad track, with a loaded wagon, where trains were running pro-pelled by steam, having placed his son, seven years of age, on the lead horse over which he, the father, had no control, was guilty of negligence in placing his son in such a dangerous position, and cannot recover for the loss of his son or his horse killed by the passing train." Ans.: " This point assumes a fact, the exist-ence or non existence of which is a question for your consideration, to wit, whether the plaintiff placed his son on a horse over which he had no control. This is for you, and we cannot assume it. If it were true it would be strong evidence of negligence. It is for you to find under all the evidence in the cause whether there was negligence of the plaintiff or his son who was killed, which con-

[Pennsylvania Railroad Co. v. Bock.]

tributed to the production of the accident. If there was such contributing negligence, the plaintiff cannot recover."

The point must be considered with reference to the facts which the testimony would have warranted the jury in finding. From that they could have found that the train was running through the borough at the rate of twenty miles an hour, and no bell was rung nor whistle blown till after the accident; that the deceased was a remarkably stout and intelligent boy for his age, and was in the habit of working with his father; that he had often ridden the lead horse in the team, had, on the day he was killed, taken the horse by a way under the railroad to the place of loading, and geared him to the wagon while his father put on the load; that he got on the horse, and the team was driven near to the railroad and stopped; that the plaintiff went upon the track, looked both ways, listened, and neither seeing nor hearing an approaching train, started back, telling the boy to come ahead; that the team was started before the plaintiff reached it, he took the mule by the head, the horse got his forefeet on the track, and was struck within three seconds from the time a witness, who was standing by, saw the cars; that as soon as said witness heard the train he hallooed, the plaintiff hallooed, but the train was too fast—not a witness saw anything that could have been done to save the horse or boy, between the time of hearing the train and the accident. It cannot be pretended that any evidence shows the horse could have been got out of the way had a man sat in the place of the boy, or if the plaintiff had had a line on the horse.

The assumption in the point forbade its affirmance. It was earnestly argued that the testimony authorized the court to assume the fact. Perhaps, in all the farming and mining portions of the state, there is not a judge or juror who would say a man could have no control of the lead horse unless he has a line on him. Be this as it may, it is not a question of law for the court to say. Where there is no line there is no control. The point could have been well refused without qualifying remark, and had it been there would have been no cause for complaint. Its assumed facts are but a fraction of the story, and the part omitted shows the plaintiff's care before his attempt to cross the track, and that he was caught too suddenly for escape. In the light of the evidence, the court could not say the plaintiff was negligent, unless it is negligence in itself for a teamster to cross a railway track with his little son riding the lead horse—a proposition which has not been advanced. Excepting one remark, the instructions to the jury were accurate, adequate and applicable to the proofs, enabling them to intelligently dispose of the questions submitted. That remark was in the answer to the fifth point, the court saying, if the assumed facts were true it would be strong evidence of negligence. As an abstraction, we think that was error; for, on the verity of

12 NORRIS—28

[Pennsylvania Railroad Co. *v.* Bock.]

the facts as assumed, without reference to the other proofs, the plaintiff was guilty of negligence. Had the point been differently framed, submitting its isolated facts to the jury, it should have been affirmed ; but the court would have reminded them, as it did, that they were to consider all the facts established by the testimony.

Unless it be certain that the error did the defendant no harm, the judgment must be reversed and the cause sent back for another trial. This is doubtful. The jury judge of the credibility of witnesses, and possibly they may have found the facts as contended for by the defendant; and, if so, the error was hurtful.

The opinion of the learned judge of the Common Pleas, on the motion in arrest of judgment, comprises all that need be said respecting the fourth and fifth assignments.

Judgment reversed, and *venire facias de novo* awarded.